In the United States Court of Appeals
for the Fifth Circuit

**NEXTERA ENERGY CAPITAL HOLDINGS, INCORPORATED, NEXTERA ENERGY TRANSMISSION, L.L.C., NEXTERA ENERGY TRANSMISSION MIDWEST, L.L.C., LONE STAR TRANSMISSION, L.L.C.; NEXTERA ENERGY TRANSMISSION SOUTHWEST, L.L.C.,**

*Plaintiff–Appellants,*

v.

**COMMISSIONER ARTHUR C. D'ANDREA, Public Utility Commission of Texas, in his official capacity, COMMISSIONER SHELLY BOTKIN, Public Utility Commission of Texas, in her official capacity; CHAIRMAN DEANN T. WALKER, Public Utility Commission of Texas, in her official capacity,**

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil No. 1:19-cv-00626-LY

**Brief of Texas Industrial Energy Consumers as
Amicus Curiae in Support of the Appellees**

Rex D. VanMiddlesworth
Michael McMillin
**THOMPSON & KNIGHT LLP**
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
(512) 469-6100
**COUNSEL FOR TEXAS INDUSTRIAL ENERGY CONSUMERS**

# Certificate of Interested Persons

(1) Case No. 20-50160

(2) The undersigned counsel of record certifies that the following persons and entities, as described in the fourth sentence of Rule 28.2, have an interest in the outcome of this case. These representations are made in order that the judges may evaluate possible disqualifications or recusal.

*Plaintiff-Appellee:*
NextEra Energy Capital Holdings, Inc., NextEra Energy Transmission, LLC, NextEra Energy Transmission Midwest, LLC, Lone Star Transmission, LLC, NextEra Energy Transmission Southwest, LLC

*Defendants-Appellants:*
Stuart H. Singer, Esq.
Carlos M. Sires
Evan Matthew Ezray
Pascual Armando Oliu
BOIES SCHILLER & FLEXNER, LLP

Jeffrey Mark Tillotson
TILLOTSON LAW

*Counsel for Plaintiff-Appellee:*
Commissioner Arthur C. D'Andrea, Public Utility Commission of Texas, in his official capacity, Commissioner Shelly Botkin, Public Utility Commission of Texas, in her official capacity, Chairman Deann T. Walker, Public Utility Commission of Texas, in her official capacity.

*Counsel for Defendants-Appellants:*
Lisa Bennett
John Richard Hulme, Esq.
H. Carl Myers
Jessica Elizabeth Soos
OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF TEXAS

| *Other Interested Parties:* | *Counsel for Other Interested Parties* |
|---|---|
| United States of America | Matthew C. Mandelberg |
| | Makan Delrahim |
| | Michael F. Murray |
| | Daniel E. Haar |
| | U.S. DEPARTMENT OF JUSTICE |
| | |
| Entergy Texas, Incorporated | Catherine Elise Garza |
| | Lino Mendiola III |
| | Michael A. Boldt |
| | EVERSHEDS SUTHERLAND (US) LLP |
| | Miguel Suazo |
| | Wajiha Rizvi |
| | George Hoyt |
| | ENTERGY SERVICES, LLC |
| | |
| East Texas Electric Cooperative, Inc. | Lawrence Bradley Hancock, Esq. |
| | Mark C. Davis |
| | Theresa Wanat |
| | Jacob Lawler |
| | HOLLAND & KNIGHT LLP |
| | |
| LSP Transmission Holdings II, LLC | Paul D. Clement |
| | Erin E. Murphy |
| | Kasdin M. Mitchell |
| | Sarah E. Williams |
| | Kenneth A. Young |
| | Anna Rotman |
| | KIRKLAND & ELLIS LLP |
| | |
| Oncor Electric Delivery Company LLC | John C. Wander |
| | Thomas S. Leatherbury |
| | Winston Patrick Michael Skinner |
| | Ethan Nutter |
| | Megan Coker |
| | VINSON & ELKINS, L.L.P. |
| | Kevin W. Brooks |
| | AXA EQUITABLE LIFE INSURANCE |
| | COMPANY |

| | |
|---|---|
| Southwestern Public Service Company | Jason Perkins |
| | Matthew E. Price |
| | Max Minzner |
| | Tassity Johnson |
| | JENNER & BLOCK LLP |
| | Ron H. Moss |
| | WINSTEAD P.C. |
| | Mark A. Walker |
| | XCEL ENERGY SERVICES INC |
| | |
| Texas Industrial Energy Consumers | Rex D. VanMiddlesworth |
| | Michael McMillin |
| | THOMPSON & KNIGHT LLP |

*/s/ Michael McMillin*

Michael McMillin

**COUNSEL OF RECORD FOR AMICUS CURIAE
TEXAS INDUSTRIAL ENERGY CONSUMERS**

# Table of Contents

Certificate of Interested Persons ........................................................................... ii

Table of Contents ..................................................................................................... v

Table of Authorities ................................................................................................ vi

List of Acronyms ................................................................................................... viii

Statement of Leave to File ....................................................................................... 1

Interest of Texas Industrial Energy Consumers as *Amicus Curiae* .................... 2

Statement of Issues ................................................................................................... 4

Statement of the Case .............................................................................................. 5

    I.  Legal Background ............................................................................................ 5

    II.  Regulatory and Factual Background ............................................................. 5

        A.    For decades, Texas law has conferred both a right and an obligation to construct new electric facilities to the utility(ies) serving the proximate area. SB 1938 clarifies how this paradigm applies to transmission service. ........................................................................... 5

        B.    The Federal Energy Regulatory Commission's (FERC's) "bundled rate exemption" recognizes the legitimate state interests in regulating electric service. .................................................................. 6

        C.    Texas has granted exemptions to service area requirements in certain unique circumstances, but is not legally required to perpetuate or expand those exemptions. ............................................. 9

        D.    SB 1938 is consistent with FERC Order 1000, which only eliminated *federal* rights of first refusal. ........................................ 11

Summary of Argument ........................................................................................... 12

Argument and Authorities ..................................................................................... 15

    I.  Under the Supreme Court's decision in General Motors v. Tracy, requiring new transmission projects to be constructed by utilities serving the immediate area does not discriminate between "similarly situated" entities. ...................... 15

    II.  NextEra's Commerce Clause claims also fail because SB 1938 draws a neutral distinction between existing electric transmission owners and *all* other entities, regardless of whether they are in-state or out-of-state. ......................... 17

    III.  SB 1938 serves legitimate local purposes that outweigh any incidental impacts on interstate commerce. ................................................................................. 19

    IV.  NextEra is not entitled to a preliminary injunction. ........................................... 21

Certificate of Compliance ...................................................................................... 24

Certificate of Service .............................................................................................. 24

# Table of Authorities

## Cases

*Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n,*
461 U.S. 375 (1983)............................................................................................ 13

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
520 U.S. 564 (1997)............................................................................................ 16

*Entergy Texas, Inc. et. al. v. Public Utility Commission of Texas,*
Case No. 03-18-00666-CV) (Tex. App. – Austin, Aug. 2, 2019) ........................ 10, 22

*General Motors Corp. v. Tracy,*
519 U.S. 278 (1997)............................................................... 13, 15, 16, 17

*Joint Petition of Sw. Pub. Serv. Co. & Sw. Power Pool, Inc. for Declaratory Order,*
341 P.U.R. 4th 195 (Oct. 26, 2017)....................................................................... 10

*LSP Transmission Holdings, LLC v. Lange,*
329 F.Supp.3d 695 (D. Minn. 2018) ...............................................13, 16, 17

*LSP Transmission Holdings, LLC v. Sieben,*
No. 18-2559, 2020 WL 1443533 (8th Cir. Mar. 25, 2020) .................... 12, 17, 18, 19

*New York v. FERC,*
535 U.S. 1 (2002)..................................................................................................... 8

*NextEra Energy Capital Holdings, Inc., et. al. v. Public Utility Commission of Texas,*
Case No. 1:19-CV-626-LY (W. D. Tex., Feb. 26, 2020) ....................................10, 18

*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.,*
579 F.3d 502 (5th Cir. 2009) ...........................................................................5, 21

*Pike v. Bruce Church,*
397 U.S. 137 (1970)............................................................................................14, 19

*Reeves, Inc. v. Stake,*
447 U. S. 429 (1980)............................................................................................ 12

*S. Union Co. v. Mo. Pub. Serv. Comm'n,*
289 F.3d 503, 508 (8th Cir. 2002) ........................................................................ 19

*White v. Carlucci,*
862 F.2d 1209 (5th Cir. 1989)..........................................................................5, 21

*Whitley v. Hanna,*
726 F.3d 631 (5th Cir. 2013).................................................................................... 5

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).................................................... 22

## Statutes

Minn. Stat. § 216B.246 ......................................................................... 16

PURA § 37.051(b) .................................................................................... 6

PURA § 37.051(e) .................................................................................... 9

PURA § 37.052(a) .................................................................................... 6

PURA § 37.051(e)
(repealed by Acts 2019, 86th Leg., ch. 44 (S.B. 1938), § 8) ........................ 10

**Rules and Other Authorities**

18 C.F.R. § 35.35 .................................................................................... 9

Fed. R. App. P. 29(a)(2) .......................................................................... 1

FERC Order No. 888, 61 Fed. Reg. 21,540 (May 10, 1996),
*aff'd by* FERC Order No. 888-A, 62 Fed. Reg. 12,274 (Mar. 14, 1997) ........ 7, 8

FERC Order No. 888-A, 62 Fed. Reg. at 12,304 ...................................... 8

*Midwest Indep. Transmission Sys. Operator, Inc.*,
150 FERC 61037 (2015) ...................................................................... 12

Texas Senate Bill 1938 (2019) .........................................................passim

*Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*,
136 FERC ¶ 61,051, 2011 WL 2956837 (July 21, 2011) ...................... 11, 12

Wright & Miller § 2948.2 ..................................................................... 22

## List of Acronyms

**CCN** – Certificate of Convenience and Necessity

**CREZ** – Competitive Renewable Energy Zones

**ERCOT** – Electronic Reliability Council of Texas, Inc.

**FERC** – Federal Energy Regulatory Commission

**FRAP** – Federal Rule of Appellate Procedure

**ISOs** – Independent System Operators

**MISO** – Midcontinent Independent System Operator

**NextEra** –NextEra Energy Capital Holdings, Inc.

**OATTs** – Open-Access Transmission Tariffs

**PUCT** – Public Utility Commission of Texas

**PURA** – Texas Public Utility Regulatory Act

**ROE** – Return on Equity

**ROFR** – Right of First Refusal

**RTOs** – Regional Transmission Organizations

**SB 1938** – Texas Senate Bill 1938 (2019)

**SPP** – Southwest Power Pool

**TIEC** – Texas Industrial Energy Consumers

**Statement of Leave to File**

Texas Industrial Energy Consumers (TIEC) was one of many parties denied intervention in the district court proceedings. This Court has indicated that parties appealing the district court's denial of a motion to intervene are nonetheless welcome to file amicus briefs. ECF Document No. 00515344972. TIEC submits this amicus brief to assist the court in considering these important issues and has elected not to challenge the lower court's decision to deny TIEC's intervention. Pursuant to Federal Rule of Appellate Procedure (FRAP) 29(a)(2), counsel for TIEC is authorized to represent that all parties to this appeal have consented to TIEC submitting an amicus brief.

**Interest of Texas Industrial Energy Consumers as** *Amicus Curiae*

TIEC is an unincorporated trade association of energy-intensive businesses that own and operate industrial facilities throughout the state of Texas. TIEC's purpose is to promote sound energy policy in Texas, and TIEC regularly intervenes and participates in legal proceedings before courts and regulatory bodies such as the Public Utility Commission of Texas (PUCT) to pursue that objective. TIEC has been intimately involved in the issues raised in this proceeding.

This is an appeal of a district court decision upholding the constitutionality of Texas Senate Bill 1938 (2019) (SB 1938). SB 1938 requires new high-voltage transmission facilities to be constructed by the entities that own the existing termination ("end") points of the new line, which promotes continuity of service, efficiencies of scale and scope, and cost-effective infrastructure in Texas. As businesses with substantial electricity requirements, TIEC members depend on the transmission system to provide reliable, cost-effective service to their facilities. While most electric customers take service from lower-voltage distribution systems, TIEC members operate uniquely energy-intensive industrial processes that connect to the electric grid directly at transmission voltage. This requires close coordination with transmission providers to establish interconnections and maintain reliable service quality at a reasonable cost. Accordingly, TIEC's members have a unique interest in restricting unnecessary fragmentation of transmission ownership, which can increase costs and impair reliability. TIEC also has an interest in ensuring that transmission service

providers remain subject to retail rate regulation by a state regulatory body such as the PUCT.

Pursuant to FRAP 29(a)(4), TIEC certifies that no party authored this brief in whole or in part, and no party, party's counsel, or other person other than TIEC contributed money that was intended to fund preparing or submitting the brief.

This brief is timely filed pursuant to the Court's procedural order issued March 20, 2020. ECF Document No. 00515353731.

**Statement of Issues**

Whether the district court properly dismissed NextEra Energy Capital Holdings, Inc.'s and its affiliates' (NextEra's) dormant Commerce Clause challenge to Texas S.B. 1938 and appropriately denied NextEra's request for injunctive relief.[1]

---

[1] This brief does not address NextEra's Contracts Clause claims.

**Statement of the Case**

## I.     Legal Background

NextEra appeals the district court's dismissal of its dormant Commerce Clause challenge to SB 1938.  This Court reviews a district court's grant of a motion to dismiss *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *See Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).

NextEra also appeals the lower court's denial of its request for injunctive relief. While this Court will review the legal basis for the lower court's decision *de novo*, that decision will only be overturned if the lower court abused its discretion. *See Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009). This Court has previously noted that it will reverse the denial of a preliminary injunction "only under extraordinary circumstances." *White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir. 1989).

## II.     Regulatory and Factual Background

### A.     For decades, Texas law has conferred both a right and an obligation to construct new electric facilities to the utility(ies) serving the proximate area. SB 1938 clarifies how this paradigm applies to transmission service.

Texas has long operated under a regulatory scheme that maximizes efficiencies of scale, minimizes costs to customers, and fosters reliability and continuity of service by giving existing monopoly electric utilities both a right and an obligation to build new transmission facilities within their service area. These rights are granted to the exclusion of *all other entities*, including other existing electric utilities.

The Texas Public Utility Regulatory Act (PURA) grants retail electric utilities a monopoly right to provide electric service within a specific geographic service areas, to the exclusion of *anyone* else. PURA § 37.051(b) states that "a retail electric utility may not furnish or make available retail electric utility service to an area in which retail electric utility service is being lawfully furnished by another retail electric utility unless the utility first obtains a certificate that includes the area in which the consuming facility is located." Similarly, PURA has long recognized the common-sense benefits of allowing an existing utility to build new facilities into proximate areas. In fact, PURA § 37.052(a) exempts an existing retail electric utility from obtaining a new certificate of convenience and necessity (CCN) to serve an area that is "contiguous to the territory the electric utility serves," "not receiving similar service from another electric utility" and "not in another electric utility's certificated area." SB 1938 codifies this longstanding practice by clarifying that a utility has the right and the obligation to construct a new transmission line that interconnects to its existing electric facilities.

**B.    The Federal Energy Regulatory Commission's (FERC's) "bundled rate exemption" recognizes the legitimate state interests in regulating electric service.**

Deciding who can provide electric service to Texas customers, under what terms, and at what cost, has traditionally been within the purview of state regulatory authorities. This is why the "bundled rate exemption" allows state regulatory authorities to retain siting, rate, and policy jurisdiction over electric service—even when the service otherwise constitutes interstate commerce—if it is provided as part of a "bundled" rate

that includes generation, transmission, and distribution service to Texas retail customers. *See* FERC Order No. 888, 61 Fed. Reg. 21,540, 21,577-78 (May 10, 1996), *aff'd by* FERC Order No. 888-A, 62 Fed. Reg. 12,274, 12,304 (Mar. 14, 1997).

In Texas, three Independent System Operators (ISOs) or Regional Transmission Organizations (RTOs) act as central planning coordinators for high-voltage transmission systems: (1) the Electric Reliability Council of Texas, Inc. (ERCOT), (2) the Midcontinent Independent System Operator (MISO), and (3) the Southwest Power Pool (SPP). These ISOs/RTOs coordinate transmission planning by local utilities to ensure that the grid is developed in a way that minimizes duplication and maximizes overall efficiency. The ERCOT grid is located entirely within the state of Texas and is not involved in interstate commerce, so all utilities operating in ERCOT are solely under the jurisdiction of the Public Utility Commission of Texas (PUCT). The MISO and SPP areas of the state include electric facilities that cross state lines and are, therefore, involved in interstate commerce.

Although electric utilities in the non-ERCOT areas connect to the interstate electric system and are subject to centralized ISO/RTO planning processes, the PUCT has maintained local regulatory control over the services and rates of those utilities under the "bundled rate exemption." While FERC generally regulates rates for interstate electric service, state regulators such as the PUCT retain jurisdiction when interstate transmission service is provided by a vertically integrated utility as part of a "bundled" rate. *See* FERC Order No. 888, 61 Fed. Reg. at 21,577-78, *aff'd by* FERC

Order No. 888-A, 62 Fed. Reg. at 12,304; *see also New York v. FERC*, 535 U.S. 1, 11-12, 25-28 (2002) (describing and upholding FERC Order Nos. 888 and 888-A on this issue). The bundled rate exception recognizes that states have a legitimate local interests in ensuring reliable, cost-effective electric services for Texas retail customers. For example, it is important that customers can turn to a responsive local regulator to ensure that their monopoly electric utility provides timely interconnections for new service, and maintains reliable service quality at a reasonable cost. *See* TIEC Attachment A (Pollock Declr.) at ¶ 6-9.[2] A key factor in ensuring that Texas utilities remain responsive to the PUCT is preserving ratemaking jurisdiction over those entities.

If merchant transmission providers such as NextEra were authorized to build and operate transmission facilities in the non-ERCOT areas, their transmission service would no longer be bundled with retail service to Texas customers, and would therefore be subject to solely to FERC rate jurisdiction. FERC Order No. 888-A, 62 Fed. Reg. at 12,304 ("[W]hen a bundled retail sale is unbundled and becomes separate transmission and power sales transactions, the resulting transmission transaction falls within the Federal sphere of regulation."). Texas has sought to retain jurisdiction over electric rates and policies because FERC's practices are significantly different from the PUCT's, and those policies can directly impact cost and reliability for customers. TIEC Attachment

---

[2] Throughout this brief, "TIEC Attachment" is used to refer to documents that were provided to the District Court as attachments to TIEC's response to NextEra's motion for a preliminary injunction. That pleading and its referenced attachments appear as Item # 93 on the District Court's docket sheet, and can be found in the Record on Appeal.

A (Pollock Declr.) at ¶ 9-10. For instance, FERC has traditionally awarded a higher return on equity (ROE) for transmission providers than the PUCT would authorize for a vertically integrated utility subject to the bundled rate exemption. TIEC Attachment A (Pollock Declr.) at ¶ 10. This, in turn, increases electric costs for customers. In addition, FERC has provided "incentive" ROEs for certain favored types of transmission development that may not be consistent with Texas policies, changing both the nature and cost of high-voltage transmission. *See, e.g.*, 18 C.F.R. § 35.35 (establishing incentive-based rate treatment for interstate transmission projects, including increased ROEs, use of hypothetical capital structures, accelerated depreciation schedules, and favorable tax treatment, among other incentives).

### C. Texas has granted exemptions to service area requirements in certain unique circumstances, but is not legally required to perpetuate or expand those exemptions.

As discussed above, Texas law has historically conferred both a right and an obligation to construct new electric facilities to the utility serving the immediate area. NextEra notes that Texas allowed a limited number of new entrant utilities into the state prior to SB 1938 to facilitate a massive transmission build-out to competitive renewable energy zones (CREZs). Appellants Br. at 18-19, 48. However, these new entrants were limited to the *intrastate* ERCOT grid and therefore remained subject to full PUCT rate and policy regulation. Before being repealed by SB 1938, PURA § 37.051(e) authorized the PUCT to "consider an application by a person not currently certificated as an electric utility for a certificate of convenience and necessity to

transmission capacity that *serves the ERCOT power region*,"[3] and required any potential new entrant to demonstrate that it has "the technical ability, financial ability, and sufficient resources in this state to own, operate, and maintain reliable transmission facilities." Tex. Util. Code Ann. § 37.051(e) (West) (repealed by Acts 2019, 86th Leg., ch. 44 (S.B. 1938), § 8). There was no corresponding authorization or qualification criteria for new entrants outside of ERCOT, indicating that the legislature did not intend to extend this treatment to areas outside of ERCOT.

Nevertheless, in 2017, the PUCT issued a declaratory order finding that Texas law did not *explicitly prohibit* new entrant merchant transmission providers in the non-ERCOT areas. *See Joint Petition of Sw. Pub. Serv. Co. & Sw. Power Pool, Inc. for Declaratory Order*, 341 P.U.R. 4th 195 (Oct. 26, 2017). That order was appealed by several parties, including TIEC, and the appeal was later dismissed as moot following the passage of SB 1938. *See* Memorandum Order, *Entergy Texas, Inc. et. al. v. Public Utility Commission of Texas*, Case No. 03-18-00666-CV) (Tex. App. – Austin, Aug. 2, 2019). In light of the uncertainty created by the PUCT's 2017 declaratory order, the Texas legislature passed SB 1938 to clarify Texas law and ensure the PUCT retains control over utility service in the non-ERCOT areas of the state. *See* Order on Motion to Dismiss, *NextEra Energy Capital Holdings, Inc., et. al. v. Public Utility Commission of Texas*, Case No. 1:19-CV-626-LY at 12 (W. D. Tex., Feb. 26, 2020). In particular, the

---

[3] Emphasis added.

legislature indicated that "S.B. 1938 will codify the **existing process** in Texas for determining the proper party to construct critical energy infrastructure[ and] maintain Texas rate jurisdiction over transmission in the non-ERCOT areas of Texas." TIEC Attachment B (Senate Committee Report) at 1 (emphasis added).[4] To that end, SB 1938 continues Texas's longstanding practice of both allowing and requiring an existing utility that owns the "endpoints" of a transmission line (typically, existing electrical substations) to build any new transmission facilities that interconnect to those endpoints. In other words, SB 1938 statutorily recognized specific service rights for a regulated utility that is *already* providing service in a certain location to the exclusion of *everyone else*—whether the potential "competitors" are in-state or out-of-state businesses.

### D. SB 1938 is consistent with FERC Order 1000, which only eliminated *federal* rights of first refusal.

In 2011, FERC issued Order 1000, which required all federally regulated RTOs to remove any federal rights of first refusal from their open-access transmission tariffs (OATTs). *See Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, 136 FERC ¶ 61,051, 2011 WL 2956837 (July 21, 2011) ("Order 1000"). In other words, FERC prohibited RTOs from providing their constituent utilities an exclusive opportunity to construct and operate transmission assets within their service areas, thereby encouraging "merchant" transmission-only utilities like NextEra to bid for the right to build new transmission assets in those areas.

---

[4] Available at: https://capitol.texas.gov/tlodocs/86R/analysis/pdf/SB01938I.pdf0.

Importantly, FERC Order 1000 was limited in scope, and explicitly allowed state or local regulators like the PUCT to continue granting rights of first refusal ("ROFR" or exclusive rights to build) to utilities within their respective jurisdictions. *See id.* at ¶ 287 ("Nothing in this Final Rule is intended to limit, preempt, or otherwise affect state or local laws or regulations with respect to construction of transmission facilities, including but not limited to authority over siting or permitting of transmission facilities."). In the wake of Order 1000, many states passed laws to preserve their local utilities' rights of first refusal over new transmission construction, and FERC subsequently ruled that RTOs may incorporate those state law rights of first refusal into their OATTs. *See LSP Transmission Holdings, LLC v. Sieben*, No. 18-2559, 2020 WL 1443533, at *2 (8th Cir. Mar. 25, 2020) (*citing Midwest Indep. Transmission Sys. Operator, Inc.*, 150 FERC 61037, 61176 ¶ 25 (2015)). Accordingly, Order 1000 does not prevent Texas from providing utilities with an exclusive right to construct transmission lines that connect to their existing facilities.

### Summary of Argument

The dormant Commerce Clause doctrine prohibits discrimination that "imped[es] free private trade in the national marketplace." *Reeves, Inc. v. Stake*, 447 U. S. 429, 437 (1980). NextEra's commerce clause challenge overlooks one critical issue: SB 1938 governs regulated, monopoly utility service—not free private trade. This is not a case of similarly situated private businesses seeking to access open markets in Texas. Instead, this appeal challenges the longstanding authority of states to regulate monopoly

service in an industry that is, by its nature, subject to local regulatory oversight. *See Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983) ("[R]egulation of utilities is one of the most important of the functions traditionally associated with the police power of the States."). Like statutes governing public utility service across the country, SB 1938 confers unique rights upon existing ***regulated utilities*** that are currently providing ***regulated utility service*** in locations where new service is required, treating them differently from ***all other entities***—including other utilities. SB 1938 does not discriminate against similarly situated entities, but confers special rights to a local provider that has been authorized by the state to provide service in a particular area—consistent with decades of utility regulation. *See General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) ("[A]ny notion of discrimination assumes a comparison of substantially similar entities."). Accordingly, Texas's attempt to codify the scope of regulated monopoly electric service within its borders does not violate the dormant Commerce Clause.

A Minnesota federal district court recently dismissed a Commerce Clause challenge to a similar Minnesota law and found that the unique burdens placed on monopoly electric utilities means that those utilities are not "similarly situated" to merchant entities such as NextEra for purposes of the Commerce Clause. *See LSP Transmission Holdings, LLC v. Lange*, 329 F.Supp.3d 695 (D. Minn. 2018) *aff'd sub nom. LSP Transmission Holdings*, 2020 WL 1443533 at *8. Indeed, if NextEra's claims were valid, then every certificated, monopoly utility service area in the country would also

violate the dormant Commerce Clause by providing "discriminatory" rights to the local provider, effectively precluding local utility regulation altogether. This cannot be the law.

Additionally, the legitimate local interests served by SB 1938 outweigh any associated burden the statute may place on interstate commerce. *See Pike v. Bruce Church, 397 U.S. 137, 142 (1970)* ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.") (internal citations omitted). Not only does SB 1938 ensure that every utility in Texas will remain subject to PUCT rate jurisdiction, but controlling which provider will construct new regulated electric facilities promotes efficiencies of scale and continuity of service for captive customers, and simplifies regulation by predetermining which entity will be responsible for new facilities in a particular area. TIEC Attachment A (Pollock Declr.) at ¶ 5-7. TIEC agrees with NextEra that, theoretically, introducing some elements of competition into the transmission sector could potentially reduce costs for customers. However, this must be done in a deliberate, holistic way through statutory changes that appropriately protect customers from the potential downsides of fragmenting the electric grid and introducing merchant providers that are not directly accountable to Texas retail customers or state regulators. Until such a framework has been implemented, the Legislature's intent to require new transmission facilities to be constructed by the

current endpoint owners should be upheld and enforced, consistent with past practice in Texas and decades of similar utility service area regulation around the country. TIEC Attachment A (Pollock Declr.) at ¶ 5.

For these reasons, and as discussed further below, this Court should affirm the district court's dismissal of NextEra's complaint.

## Argument and Authorities

I.    **Under the Supreme Court's decision in General Motors v. Tracy, requiring new transmission projects to be constructed by utilities serving the immediate area does not discriminate between "similarly situated" entities.**

The first inquiry in a dormant Commerce Clause analysis is whether the challenged statute overtly discriminates against interstate commerce in favor of in-state interests, and the Supreme Court has found that "any notion of discrimination assumes a comparison of substantially similar entities." *Tracy*, 519 U.S. at 298. In *Tracy*, the Supreme Court found that state-regulated local monopoly natural gas utilities—which primarily provided bundled transmission and distribution service to the public—were not similarly situated with unregulated merchant natural gas marketers for purposes of the dormant Commerce Clause, even though those merchant providers sometimes competed with the local monopolies for bulk sales contracts to large customers. *Id.* at 310. In making that determination, the *Tracy* Court found that "*the importance of traditional regulated service to the captive market makes a powerful case against any judicial treatment that might jeopardize [the utilities'] continuing capacity*

*to serve the captive market*." *Id.* at 304 (emphasis added). In other words, for purposes of the Commerce Clause, the unique public service role served by local, regulated monopoly utilities means that they are not similarly situated to non-monopoly companies that seek to provide similar service. This principle is strong enough that, in a later opinion, Justice Scalia noted that *Tracy* "effectively creates what might be called a 'public utilities' exception to the negative Commerce Clause." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 607 (1997) (Scalia, J., dissenting). That exception applies here, as the vertically integrated non-ERCOT utilities that are ensured development rights under SB 1938 are not similarly situated to merchant transmission providers like NextEra.

Recent federal court precedent demonstrates that laws like SB 1938 do not violate the dormant Commerce Clause. In 2012, Minnesota adopted M.S.A. § 216B.246. *See* TIEC Attachment C (Minnesota Statute). Similar to Texas's SB 1938, the Minnesota statute gave existing electric utilities a right to build and own new electric transmission lines that interconnect to their existing facilities. *Id.* at Subd. 2.[5] In 2017, a merchant transmission provider challenged the Minnesota statute, alleging (as NextEra does here) that limiting transmission development to existing endpoint owners violates the dormant Commerce Clause. *LSP Transmission*, 329 F.Supp.3d at 703. In the Minnesota

---

[5] That law states that "[a]n incumbent electric transmission owner has the right to construct, own, and maintain an electric transmission line that has been approved for construction in a federally registered planning authority transmission plan and connects to facilities owned by that incumbent electric transmission owner."

proceeding, a federal district court applied *Tracy* to conclude that it is not discriminatory to give a utility who owns the endpoints of a proposed transmission project the right to construct that project, to the exclusion of all other entities. *LSP Transmission*, 329 F.Supp.3d at 708. The Eighth Circuit recently upheld that decision, but without addressing the lower court's reliance on *Tracy*. *LSP v. Sieben*, 2020 WL 1443533 at *4. This recent precedent is discussed in greater detail below.

II.     **NextEra's Commerce Clause claims also fail because SB 1938 draws a neutral distinction between existing electric transmission owners and *all* other entities, regardless of whether they are in-state or out-of-state.**

Beyond the *Tracy* decision, NextEra's dormant Commerce Clause challenge also fails because SB 1938 draws a neutral distinction between a utility that owns the existing endpoints for a new line and *all* other entities—whether in-state or out-of-state. *LSP Transmission*, 329 F.Supp.3d at 708 (finding that Minnesota ROFR "statute draws a ***neutral distinction*** between existing transmission owners whose facilities will connect to a new line and all other entities, regardless of whether they are in-state or out-of-state.") (emphasis added); *see also LSP Transmission*, 2020 WL 1443533 at *5 ("Minnesota's preference is for electric transmission owners who have existing facilities, and its law ***applies evenhandedly to all entities***, regardless of whether they are Minnesota-based entities or based elsewhere.") (emphasis added).

As explained above, SB 1938 codifies Texas's longstanding practice of certificating an existing utility that owns the "endpoints" to a new transmission line (typically, existing electrical substations) to build that new line. *See* TIEC Attachment B

(Senate Committee Report) at 1. In other words, SB 1938 gives a utility that owns existing electric facilities where a new transmission line will interconnect the right (and the obligation) to build and operate the new line to the exclusion of **everyone** else, regardless of whether the would-be "competitors" are in-state or out-of-state businesses. Additionally, the existing utilities in the non-ERCOT areas are not exclusively Texas businesses—they are headquartered in multiple states and also operate transmission facilities outside of Texas. *See* Order on Motion to Dismiss, *NextEra Energy Capital Holdings, Inc., et. al.,* Case No. 1:19-CV-626-LY at 11; *cf. LSP Transmission Holdings*, 2020 WL 1443533 at *5 (noting that Minnesota utilities are largely headquartered elsewhere and operate facilities in multiple states).

For many decades, state regulators have granted monopoly service rights to the utilities that are already providing electric service at a given location, and that practice has never constituted inappropriate "discrimination" against other entities. TIEC Attachment A (Pollock Declr.) at ¶ 5. Indeed, consolidating electric service in the hands of monopoly service providers is a classic feature of utility regulation across the county, meant to ensure continuity of service and maximize economies of scale for captive utility customers. TIEC Attachment A (Pollock Declr.) at ¶ 5-8. Granting a utility the exclusive right to develop facilities that connect to its endpoints may exclude potential competitors from outside the state, but it **equally** excludes competitors from **inside** the state. Because SB 1938 applies equally to existing endpoint owners regardless of

whether they are Texas companies, NextEra cannot show that the statute overtly discriminates against out-of-state entities.

## III. SB 1938 serves legitimate local purposes that outweigh any incidental impacts on interstate commerce.

As discussed above, NextEra cannot show that SB 1938 overtly discriminates against interstate commerce because merchant transmission providers like NextEra are not similarly situated to local, regulated monopoly utilities serving customers in Texas, and because SB 1938 draws a neutral distinction between endpoint owners and *all* other entities, not just out-of-state companies. However, NextEra also contends that under *Pike v. Bruce Church, Inc.*, a law that does not overtly discriminate against interstate commerce can still violate the dormant Commerce Clause if it imposes an undue burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." 397 U.S. 137, 142 (1970). As a preliminary note, "the Supreme Court has rarely invoked *Pike* balancing to invalidate state regulation under the Commerce Clause." *S. Union Co. v. Mo. Pub. Serv. Comm'n*, 289 F.3d 503, 508 (8th Cir. 2002). But regardless, and similar to the Minnesota statute discussed above, any burden that SB 1938 places on interstate commerce is tailored to achieving the local benefits of maintaining state regulatory authority over monopoly utility service to captive customers. *Cf. LSP Transmission*, 2020 WL 1443533 at *8 ("[W]e cannot say that the burden imposed by Minnesota's ROFR law is clearly excessive in relation to

Minnesota's legitimate state interests in regulating its electric industry and maintaining the status quo.").

The local interests served by SB 1938 are the same interests that have supported state regulation of electric utility service for decades—ensuring safe, reliable, and cost-effective electric service. The Texas Legislature adopted SB 1938

The local interests served by SB 1938 in part because it "would ensure the geographic continuity of the [electric transmission] system in a way that further facilitates reliability." *See* TIEC Attachment B (Senate Committee Report) at 1. Requiring a utility providing existing service in a specific location to construct new facilities in that area ensures that a single provider is responsible for reliability, maintenance, and system restoration during storms or other outage events. TIEC Attachment A (Pollock Declr.) at ¶ 6. In addition, it provides clarity around which entity has an *obligation* to construct new facilities that are needed to serve the public, thereby preventing unnecessary controversy and minimizing regulatory litigation. *Id.* Further, it promotes cost-effective utility rates by taking advantage of economies of scale. *Id.*

In areas outside of ERCOT, SB 1938 also ensures that the PUCT retains retail rate jurisdiction over transmission facilities. *See* TIEC Attachment B (Senate Committee Report) at 1.[6] As discussed above, the PUCT retains jurisdiction over the retail rates of

_____

[6] "[I]n the non-ERCOT areas of the state served by utilities engaged in interstate commerce, [SB 1938] will ensure that PUC maintains its current jurisdiction over transmission rates borne by Texas customers rather than having a federal rate."

non-ERCOT utilities under the "bundled rate" exemption, but that exemption would not apply to merchant transmission providers like NextEra. There are important differences in FERC's ratemaking policies compared to the PUCT's that impact costs for customers, including TIEC's member companies. TIEC Attachment A (Pollock Declr.) at ¶ 9-10. Additionally, retaining PUCT rate jurisdiction over utilities in the state ensures that those utilities are accountable to a local regulator, and gives customers a local authority to assist them with any service quality and cost issues. *Id.* These benefits would be compromised if ratemaking (and policy) jurisdiction were ceded to FERC. *Id.* This is a legitimate local interest that has long justified state regulation of public utilities, and similarly justifies requiring new transmission facilities to be constructed by the local provider that serves local retail customers.

## IV.      NextEra is not entitled to a preliminary injunction.

As shown above, it is unlikely that NextEra will prevail on the merits of its claims, so the lower court did not abuse its discretion in denying NextEra's request for injunctive relief. *See Palmer,* 579 F.3d at 506 (denial of request for injunctive relief is reviewed for abuse of discretion). Nor does this case present "extraordinary circumstances" that would merit reversing the lower court's decision on injunctive relief. *See Carlucci,* 862 F.2d at 1211. In fact, granting NextEra's requested injunction would simply invite duplicative and unnecessary litigation on the PUCT's pre-SB 1938 authority to grant NextEra's requested CCNs, and "[t]he policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant

when there is reason to believe that the decree will be burdensome." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008) (quoting Wright & Miller § 2948.2, at 167–168).

Contrary to NextEra's implications, granting its requested injunction would not allow it to take possession of the Jacksonville-Overton line or begin construction on the Hartburg-Sabine line. NextEra would still need to obtain CCNs for those projects from the PUCT, and the Commission's authority to issue CCNs to merchant transmission providers outside of ERCOT under the law prior to SB 1938 was the subject of an ongoing appeal in state court that was mooted when SB 1938 passed. *See* Memorandum Order, *Entergy Texas, Inc.,* Case No. 03-18-00666-CV (Tex. App. – Austin, Aug. 2, 2019). Additionally, in recent Open Meeting discussions about NextEra's request for a CCN for the Jacksonville-Overton transmission line, the current PUCT commissioners openly questioned the validity of the 2017 declaratory order that formed the basis of that appeal, and stated that they do not believe the pre-SB 1938 version of PURA gave the PUCT authority to grant a CCN to NextEra. *See* TIEC Attachment E (Transcript of February 7, 2019 PUCT Open Meeting Discussion). Therefore, enjoining the application of SB 1938 would only reinvigorate that prior, unresolved legal controversy and throw the ownership status of important utility facilities that are needed to serve customers into turmoil. Accordingly, the Court should not revisit the denial of NextEra's request for injunctive relief because doing so would interfere with timely, cost-effective transmission development that is necessary to meet growing demand.

## Prayer

For these reasons, Texas Industrial Energy Consumers respectfully requests that the Court affirm the district court's decision.

Date: April 22, 2020

Respectfully Submitted,

By *Rex D. VanMiddlesworth*
    Rex D. VanMiddlesworth
    Michael McMillin
    **THOMPSON & KNIGHT LLP**
    98 San Jacinto Blvd., Ste. 1900
    Austin, TX  78701
    Telephone: (512) 469-6100

    **COUNSEL FOR AMICUS CURIAE**
    **TEXAS INDUSTRIAL ENERGY CONSUMERS**

## Certificate of Compliance

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7) because it contains 5,072 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with serifs in a 14-point font, using a plain face except where italics or boldface is used for emphasis, and case names are italicized.

*/s/ Michael McMillin*
Michael McMillin


## Certificate of Service

I certify that on April 22, 2020, I electronically filed the Brief of Intervenor Defendant-Appellant Texas Industrial Energy Consumers with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system, including opposing counsel.

*/s/ Michael McMillin*
Michael McMillin